GARRISON, Judge,
dissenting:
I cannot agree with the majority in this case. At the outset — to put this matter in the perspective in which I see it — it should be said that the operation of which Mrs. Sabo was a part is best likened (with regard to its administrative and operated controls) to that of a Chinese laundry in a thunderstorm.
On April 16, 1977, the Internal Affairs Division, hereinafter I.A.D., of N.O.P.D. conducted a surprise investigation of payroll procedures at the Auto Pound. John Dupre, Frederick Plalygrap, John Johnston and Anthony Scott, all agents of I.A.D., arrived at the pound at 1:00 p. m. Mrs. Sabo, was not at the pound. She was taken to Internal Affairs Headquarters for questioning. In the course of that questioning, she was first given Miranda warnings, including the following from a transcript of the questioning:
“Therefore, it is my duty to inform you that you have your constitutional rights about giving a statement. I have filled out NOPD Rights on an Arrestee or Suspect Form # 94338, advising you of your rights. That you need not make any statements, that is you have a right to remain silent, anything you say may be used against you in trial. You have the right to consult with and obtain the advice of an attorney before answering any questions. If you cannot afford an attorney, the court will obtain an attorney to represent you and advise you. You have the right to have your attorney or an appointed attorney present at the time of any questioning or giving of any statements. Do you understand those rights? (emphasis added)
A. Yes, I do.
*56 Q. I am given to understand by yourself, that you wish to speak to an attorney before waiving these rights, am I correct?
A. Correct.
Q. As a result of your refusing to sign waiving your rights concerning any statements made in this criminal investigation I now advise you that we are terminating temporarily this criminal investigation and are beginning the departmental internal investigation. Do you understand this?
A. Yes.”
Switching from the criminal investigation to the departmental investigation in a matter of seconds (and accelerating with corresponding speed the posture of jeopardy in which Mrs. Sabo was being placed) the interrogator shifted into higher gear:
“Q. I have given you a copy of NOPD Form # 38A, outlining your rights as an employee, under Article 6, of the City and Police Contract. I am requesting that you sign this form acknowledging that you have read these rights. You have signed this form, is that correct?
A. Yes.
Q. ... I now advise you that as a City Civil Service Employee, you may not refuse to answer questions relating to the affairs of government of the State or City, or the conduct of any State or City officer or employee including yourself, and your refusal to do shall operate as a forfeiture of your Civil Service job and you will not be eligible for appointment to any position in a State or City Civil Service thereafter, for a period of ten years. I hereby advise you that Paragraph (1), Section 15, of Article 14, of the Louisiana Constitution, outlines that the heretofore stated requirements of Civil Service Employees, and also provided the heretofore stated penalty for noncompliance. I also advise you that in the United States Supreme Court, (Garrity v. New Jersey, 385 U.S. 493, [87 S.Ct. 616, 17 L.Ed.2d 562]) rules that statements made or answers given by Civil Service Employees are not free and voluntary in the sense that they can be introduced in a criminal proceeding against a Civil Service Employee making them when such statements or answers were required by State law under penalty of job forfeiture. I again advise you that this Supreme Court ruling, because of the provisions of Paragraph (1), Section 15, of Article 14, of the Louisiana Constitution, already mentioned is applicable in Louisiana, and that the total legal effect is that you are required to make statements and answer questions in a departmental internal investigation. However, any statement made by you or answers given by you in a departmental internal investigation, cannot be introduced in a criminal prosecution against you. Do you understand this?
A. Yes.
Q. In view of the above, are you willing to comply with State law and make a statement and answer questions in this departmental internal investigation?
A. No.
Q. As you have indicated your unwillingness to make a statement and answer questions in this departmental internal investigation in compliance with State law and irrespective of legal safeguard, I now order you to make a statement and answer questions in this departmental internal investigation. Will you obey this order?
A. No....”
(emphasis added)
Mrs. Sabo informed the interrogator that she would consider making a statement after consulting her attorney. However, she was unable to contact him within the hour and a half which she was given.
The following day, Mrs. Sabo was suspended peremptorily for 79 days through July 4, 1977 and terminated as of July 5, 1977 for alleged payroll irregularities of April 16, 1977 and for failure to obey a direct order to co-operate in the departmental investigation by answering questions. The City Civil Service Commission affirmed Mrs. Sabo’s lightning termination and she appealed.
*57 I believe that the Civil Service Commission erred in holding that Mrs. Sabo could be compelled to testify against herself in the departmental investigation and that her failure to do so could result in dismissal. The section of the Louisiana Constitution referred to during Mrs. Sabo’s interrogation is Article 14 § 15, paragraph (P)(l) of the Constitution of 1921. This section was not re-enacted in the Constitution of 1974, even though the legislature re-enacted entire blocks of the 1921 Constitution dealing with civil servants. See Art. 10 § 18, Constitution of 1974 referring to Art. 14 § 15.1, Constitution of 1921. In the absence of an express constitutional grant of such extraordinary power, Art. 14 § 15 of the Constitution of 1921 was repealed by Art. 14 § 17 of the Constitution of 1974, as the prior constitutional provision is now in conflict with Art. 1 § 13 of the Constitution of 1974, which provides as follows:
“Section 13. When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceeding, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.”
Having so commented upon the threshold issue, it hardly need be added that the interrogator did not possess the prosecutorial and judicial powers which would allow him to make a binding grant of immunity from criminal prosecution.
Turning now to the second ground for dismissal, the alleged payroll irregularities of April 16,1977,1 believe that the Commission erred in terminating Karen Sabo on these grounds. The alleged payroll irregularities arose from Karen Sabo’s compliance with the inferential, but nonetheless clear order from her supervisor, Sergeant Pittman, who instructed her to use a system known as “compensatory time earned” or “C.U.” Sergeant Pittman testified that Karen Sabo was following his instructions. We note that Karen Sabo was the only N.O.P.D. non-commissioned employee at the pound at the time. We also note that Sabo’s refusal to follow any orders from Sergeant Pittman would also have been ground for termination. Essentially what this entire affair comes down to is that Mrs. Sabo was working in accordance with the orders, whether express or implied, of her commander in the extremely loose operation which he had long since instituted.
In any case, if 20-20 hindsight suddenly was going to be applied to this curiously lax police operation it was the essence of unfairness to single out Mrs. Sabo, its sole civilian employee, and begin it with her.
For the foregoing reasons, I dissent.